IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LOIS O'QUIN, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-01392-C |
| | § | |
| TEXAS WOMAN'S UNIVERSITY, | § | |
|     *Defendant.* | § | |

___

## PLAINTIFF'S AMENDED COMPLAINT
## AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

    **COMES NOW, Dr. LOIS O'QUIN**, hereinafter called ("Plaintiff" or "Oquin"), complaining of and about TEXAS WOMAN'S UNIVERSITY hereinafter called ("Defendant" or "TWU"), and for cause of action shows unto the Court the following Amended Complaint and Jury Demand:

### I. PARTIES AND SERVICE:

1. Plaintiff, Dr. Lois Oquin, is a citizen of the United States, the State of Texas and resides in Denton Dallas County, Texas, by and through attorney of record Mellannise Henderson Love, 100 Crescent Court, Suite 700, Dallas Texas 75201.

2. Defendant, Texas Woman's University is an entity located at Texas Woman's University has a principle office in Dallas Texas, can be served with process by and through their attorney of record, Office of the

Attorney General. Jeffrey E. Farrell, Assistant Attorney General, P.O. Box 12548, Capitol Station.

## II. JURISDICTION:

3. This court has jurisdiction over Plaintiff's claims, jurisdiction conferred on the court pursuant to Sections 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, 42 USCS § 12102, 504 Rehabilitation claims of discrimination, retaliation, failure to accommodate and damages; which prohibits discrimination against persons with disabilities by programs receiving federal assistance, and retaliation. Dr. Oquin initiates this action herein, seeking economic and equitable relief for the unlawful discrimination she sustained by TWU.

4. Venue in this District is proper under 28 U.S.C. § 1391 because Plaintiff resides in this District, Defendants employed Plaintiff in this District, Defendants operate its college in this District, and a substantial part of the events giving rise to the claim herein occurred in this District.

## III. **FACTUAL ALLEGATIONS AND PERTINENT FACTS:**

5. Dr. Oquin brings this action pursuant to The Rehabilitation Act, which expressly prohibits discrimination in employment on the basis of disability. See 29 U.S.C. §§ 791, 2 et seq.; 42 U.S.C. §§ 12101, et seq.

6. TWU is a recipient of federal financial assistance and has agreed to comply with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, and its implementing regulation, 45 C.F.R. §§ 84.41-84.47, as a condition of receiving such financial assistance as evidenced by way of practice and as referenced on their public website.

7. Under the Rehabilitation Act provisions, a University such as TWU cannot deny qualified individuals

employment opportunities or benefits or discriminate against them because they have disabilities.

8. Dr. Lois Oquin, was an employee for Texas Woman's University for 18 years, she at no time had any infractions as to university policies or practices and held an impeccable record of work.

9. Dr. Oquin's employment track with TWU was incredibly noteworthy; she started as a professor in 2001; she initially worked in the capacity as a part-time contractual professor by teaching ethics courses in the Doctor of Nursing Practice Program ( DNP). In 2013, she was asked to serve as the Interim Director of DNP.

10. In 2015, Dr. Oquin was promoted to Director of Nursing where she was responsible for teaching hybrid courses in the DNP program, and for supervising all courses. Specifically, she supervised courses in Ethics, Nursing Philosophy, Nursing Politics, Health Measurement Health Management, DNP Clinical Project I and II. Plaintiff contends that all the above was in her role as DNP until her questionable demotion from that position.

11. By way of background, when Dr. Oquin was informed that she could no longer serve in the role of the DNP position she was told that she would be moved into a lateral position and someone else would assume her position. Dr. O'quin was replaced by a white female from Alabama, who was recruited by Dr. Hufft (the former Dean) and reportedly a friend of Dr. Hufft. Important to add, Plaintiff was required to orient and train her replacement.

12. After two years of mentoring her replacement in the DNP program, her successor took over the program in January 2019.

13. For the fall 2019 semester, Plaintiff's workload was significantly decreased. She was given only two theory classes and 1 assessment class (Grad level) to teach online from her home. This new teaching

schedule required Plaintiff to have minimal contact on TWU's campus. Notwithstanding the reduced teaching assignment, in November 2019, Plaintiff's teaching contract was renewed for the 2019-2020 academic year.

14. In the fall of 2019, Plaintiff started having health issues, specifically she developed high blood pressure and had sleep apnea which caused her to unwittingly fall asleep during the day, and she had difficulty remaining awake at times. Plaintiff was required to sleep under a C-PAP machine at night to promote better waking ability during the day. She also struggled with high blood pressure. The high blood pressure in conjunction with the sleep apnea affected her overall quality of life and would at times, put her in an altered state of consciousness.

15. On December 15, 2019, Plaintiff was notified by TWU's (HR) that after 18 years, she was among those who were identified by way of an audit that she would need to return to TRS (Teacher Retirement System of Texas) for medical coverage. Plaintiff was given only two weeks to select and pay premiums for new insurance coverage from TRS with no further coverage by TWU (ERS). Unfortunately, this placed Plaintiff at grave risk as she had several medical conditions that required continuous monitoring and treatment. Plaintiff was unable to secure official medical coverage until January 16, 2020, but could not use it until January 24, 2020, by the time Plaintiff had been unmedicated for several weeks.

16. Not being treated and medicated for several weeks took a toll on Plaintiff. On January 15, 2020, Plaintiff had a medical episode while at work, where she began to feel ill. She started staggering in the hallway and had to hold on to the walls and elevator for assistance. A colleague witnessed her struggle with walking and volunteered to get Plaintiff's walking stick, which she had just started using the walking stick to assist with her walking. Plaintiff needed the walking stick to assist with her walking, maintaining

balance, assistance with staggering, which periodically surfaced as a result of her high blood pressure. Because TWU had Plaintiff go without medical coverage for multiple weeks, she had to wear a cardiac heart monitor, and have an echocardiogram, because her blood pressure had been up to dangerous levels.

17. Because of Plaintiff's medical condition, she in conjunction with her physician, requested a reasonable accommodation to teach courses online as she had previously done before. Plaintiff's request for an accommodation was denied by the Defendant. Once TWU became aware of Plaintiff's health challenges, and her request for accommodation, there was a progression of conflicts with the course manager, then an escalation of false statements told to the new Associate Dean about Plaintiff's performance.

18. In January 2020, Plaintiff continued to have a myriad of false claims launched against her regarding her work performance. Specifically, Plaintiff was wrongly accused of lack of professional ethics for faculty, failure to score student's assignments in a timely manner, failure to respond to course manager's meeting and e-mails that Plaintiff was not told about as she was not required to teach that course on those days due to another assigned course. Plaintiff complained that she was being harassed and retaliated against.

19. On February 12, 2020, Dr. Oquin met with Ms. Cyndee Tanttari, Sr. HR Generalist. The interview included Dr. Oquin's statement of concerns about her work environment within the College of Nursing. In a meeting on February 3, 2020, Dr. Oquin reported that she received a corrective action letter entitled "Final Warning" delivered by Associate Dean. Dr. Hawkins, with another faculty member present, Ms. Kristine Morris. Dr. Oquin reported to Ms. Tanttari that she felt she had been subjected to discrimination because of disability. On February 18, 2020, Mr. Tony Yardley, Director of Employee Relations, HR Compliance & Equity, sent a Notice of Investigation to Dr. Oquin and each respondent, Drs. Mainous and Hawkins.

20. On February 20, 2020, Plaintiff doctor submitted a requested accommodation on her behalf for extreme fatigue and sleep disorder.

21. In the Spring 2020, in an ongoing act of retaliation, Dr Oquin's workload was attacked. TWU would not tell her why she was unable to teach in the doctoral program DNP anymore; Plaintiff was only granted two Labs to teach. Plaintiff contends that she was discriminated against because of her disability and in retaliation for opposing TWU's work- place practices.

22. On June 23, 2020, TWU responded that there is insufficient evidence to substantiate Dr. Oquin's allegations that Dr. Mainous and Dr. Hawkins engaged in discrimination. Contemporaneous with this finding was the elimination of Dr. Oquin's teaching contract; after eighteen years of employment, her contract was not renewed.

23. In another instance of discrimination, TWU rescinded Plaintiff's summer 2020 teaching assignment, terminated her employment and denied her merit pay. Plaintiff was retaliated against after she complained about being denied a reasonable accommodation to which she was entitled under the Rehabilitation Act.

24. Plaintiff alleges that due to her disabilities, TWU subjected her to harassment, unwarranted discipline, discrimination, and retaliation, and in that their arbitrary actions led to Plaintiff's unlawful termination. Plaintiff contends that the nonrenewal al of her contract was the basis of her disability.

25. Based upon the acts of discrimination above, Plaintiff has sustained damages for which she now sues.

### IV.
### VIOLATION OF THE REHIBILITATION ACT:

26. Plaintiff incorporates by reference paragraphs 1-25 as is fully set forth herein.

27. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that: No otherwise qualified

individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency.

28. Although whether a plaintiff has a disability under the Rehab Act "is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual. Because Plaintiff's disability of her sleep apnea, high blood pressure and walking limitations, substantially limits at least one of Plaintiff's major life activities such as self-care, sleeping, walking, standing, lifting, bending, breathing, concentrating, thinking, communicating, and working; plaintiff is an individual with a disability under the Rehabilitation Act.

29. Moreover, during the relevant time period, Plaintiff was regarded as having an impairment as having such an impairment as the details of such were made a part of a discrimination complaint launched by the Plaintiff in February 2020, and the corrective action made the bias of Plaintiff's termination of employment.

30. Plaintiff alleges that TWU discriminated and retaliated against her in violation of The Rehabilitation Act, when she was denied a reasonable accommodation ad based upon her subjection termination.

31. Based upon the aforementioned facts of age discrimination, Plaintiff has sustained damages for which she now sues.

## V. DEFENDANT'S FAILURE TO ACCOMMODATE

32. Plaintiff incorporates by reference paragraphs 1-31 as if fully set forth herein.

33. An employer covered by the Rehabilitation Act, such as TWU also has an obligation to "reasonably

accommodate" an individual with a disability.

34. Dr Oquin alleges a *prima facie* case for failure to accommodate under the Rehabilitation Act and she can show that at the time (1) she had a disability and or a perceived disability that limited her major life activities; (2) she was otherwise qualified to perform the essential functions of her job, and was qualified for the job in question as she had been in the same position for 18 years, and capable of continued performance with a reasonable accommodation, (3) TWU had notice of her disability; as it was made the basis of an internal complaint made by her and she alleged the same in her corrective action that lead to her termination, and (4) TWU failed to reasonably accommodate her disability, after being made aware of the disability.

35. Based upon the aforementioned facts of failure to accommodate, Dr Oquin has sustained damages for which she now sues.

## VI. RETALIATION BY TWU :

36. Plaintiff incorporates by reference paragraphs 1-35 as is fully set forth herein.

37. Plaintiff maintains that she was retaliated against after she complained about her disability discrimination. The compliant of the disability discrimination was protected activity under the statute.

38. Plaintiff alleges that the Defendant instituted a campaign of retaliation, which included Plaintiff's termination for opposing and complaining of unlawful and discriminatory employment practices; and that the Defendants discriminated against her for engaging in protected activity. Plaintiff experienced an adverse employment action when she was

terminated, and a clear causal link existed between the protected activity and the adverse employment action.

39. Because of the Defendant's actions, Plaintiff has suffered damages for which she sues.

### a. **DAMAGES:**

a. Plaintiff sustained the following damages resulting from the actions and/or omissions of Defendant described hereinabove: All relief to which the Plaintiff is entitled. a. All reasonable and necessary Attorneys' fees incurred by or on

behalf of Plaintiff.

b. Compensate Plaintiff as the Court deems equitable and just.

c. All reasonable and necessary costs incurred in pursuit of this

suit;

d. Emotional pain;

e. Expert fees as the Court deems appropriate;

f. Cost in amount the Court deems equitable and just to make Plaintiff whole;

h. Inconvenience;

i. Interest;

j. Loss of enjoyment of life;

k. Mental anguish in the past;

l. Mental anguish in the future;

m. Loss of earnings in the past;

n. Loss of earning capacity which will, in all probability, be incurred in the future; and  o.

Loss of benefits.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Dr. Lois Oquin requests the Defendants to be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for Plaintiff against Texas Woman's University for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which she may be entitled at law or in equity.

Respectfully submitted,

THE LAW OFFICE OF MELLANNISE HENDERSON-LOVE, PLLC

By: */s/Mellannise Henderson-Love*
**Mellannise Henderson-Love, PLLC**
Texas Bar No. 00796741
100 Crescent Court, Suite 700
Dallas, Texas 75201
Tel. (214)638-8777
Fax. (214)602-7699
Email: Mlove@lovelawtx.com

Attorney for Plaintiff, ***Dr. Lois Oquin***

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY

## CERTIFICATE OF SERVICE

      I certify that a copy of the foregoing document was served upon the following counsel of record *via* the Court's ECF system on the 9th day of November 2021:

JEFFREY E. FARRELL
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
General Litigation Division - 019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 463-2120 Facsimile: (512) 320-0667
jeffrey.farrell@oag.texas.gov